**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KARISSA A. RONKIN,** | **: NO.:** |
| **Plaintiff** | **: (District Judge:                )** |
| | **:** |
| **v.** | **: CIVIL ACTION - LAW** |
| | **:** |
| **ANDY B. VIHN,** | **: JURY TRIAL DEMANDED** |
| **Defendant,** | **: (Electronically Filed)** |

**COMPLAINT**

**AND NOW** comes the Plaintiff, Karissa A. Ronkin, by and through her undersigned counsel, and the law firm of Boyle, Autry & Murphy, and avers as follows:

**JURISDICTION**

1.      This action is brought pursuant to 42 U.S.C. § 1983.

2.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 & 1367.

3.      Pursuant to 28 U.S.C. § 1391, venue is proper in this Court, as the events in question occurred at the Gallery Place/Chinatown Metro entrance, which is located at the intersection of 7th Street and H Street, with an address of 630 H Street, NW, Washington, D.C., 20003.

**PARTIES**

4.      Plaintiff, Karissa A. Ronkin, is an adult who is currently residing in North Carolina. At the time of the incident which is the subject of this Complaint, Ms. Ronkin was a resident of the District of Columbia, residing at 1036 Newton Street, NE, Washington, D.C., 20017.

5.      Defendant, Andy B. Vihn, is an adult individual, who, during all relevant times, was

1

employed by the Metro Transit Police Department ("MTPD"), as a police officer.[1]   The MTPD has a mailing address of 600 5th Street, NW, Washington, D.C. 20001.   All of Officer Vihn's actions or inactions were taken under color of state law.   Officer Vihn is sued in his individual capacity.

## FACTUAL BACKGROUND

6.      On Thursday, September 16, 2010, at approximately 10:30 P.M., Plaintiff, Karissa A. Ronkin, entered the Gallery Place/Chinatown Metro entrance, which is located at the intersection of 7th Street and H Street, intending to ride the train to the 2400 block of Pennsylvania Avenue, Washington, D.C., with two friends.

7.      On the night in question, Ms. Ronkin was 21 years of age.

8.      Before arriving on the train platform, Ms. Ronkin had consumed alcoholic beverages but was not intoxicated and was not a danger to herself or others.

9.      While one friend was using the fare machine, Ms. Ronkin and the other friend began horsing around on the platform between the fare machines and the kiosk.

10.      Defendant, Officer Andy B. Vihn, approached Ms. Ronkin and her friends and stated, "If you are going to fuck around, get the fuck off of my metro."

11.      Ms. Ronkin and her friends left the Metro system and rode the escalator back up to the street.

12.      Believing that if they did not horse around, Officer Vihn would permit them to ride the

---

[1] The Washington Metropolitan Area Transit Authority ("WMATA" and commonly referred to as "Metro") is a tri-jurisdictional government agency that operates transit service in the Washington, D.C. metropolitan area. WMATA was created by an interstate compact authorized by the United States Congress, and is jointly funded by the District of Columbia, jurisdictions in suburban Maryland, and northern Virginia.   WMATA has its own police force, the Metro Transit Police Department ("MTPD").

2

Metro, Ms. Ronkin and her friends reentered the Metro system at the same location.

13.    After descending the escalator, Officer Vihn again approached Ms. Ronkin and her friends yelling at them that they needed to leave.

14.    Officer Vihn and Ms. Ronkin argued about Ms. Ronkin's and her friends' right to ride the Metro.

15.    At one point, Officer Vihn yelled at Ms. Ronkin to "take a cab," and that "this is my station, leave."

16.    Ms. Ronkin flippantly stated, "It is your fucking station…......yeah" and then turned around and began to walk away from Officer Vihn back toward the exit.

17.    Upon hearing Ms. Ronkin's comment, Officer Vihn became enraged, and pursued Ms. Ronkin, repeatedly stating "come here, come here," while reaching for Ms. Ronkin.

18.    At the time, Ms. Ronkin did not know that Officer Vihn was approaching her from behind.

19.    Without looking back toward Officer Vihn and while continuing to walk back toward the exit, Ms. Ronkin waived her hand dismissively in the air while stating, "go fuck yourself."

20.    Officer Vihn caught up to Ms. Ronkin, grabbed her around the neck, and threw her to the ground.

21.    Officer Vihn spent the next three minutes repeatedly moving Ms. Ronkin's sundress, purposefully exposing Ms. Ronkin's red thong panties and naked buttocks to the general public, and pressing what Ms. Ronkin believes to be his erect penis against her leg and bare buttocks.

22.    A small group of people stopped and pleaded with Officer Vinh to get off of Ms. Ronkin but Officer Vinh refused.

3

23. Instead, Officer Vihn repeatedly yelled at Ms. Ronkin to "stop resisting," despite the fact that the video definitively establishes that Ms. Ronkin was not resisting arrest.

24. It is believed and therefore averred that Officer Vihn engaged in this "stop resisting" charade to provide him with time for his penis to become flaccid again.

25. Officer Vihn handcuffed Ms. Ronkin while unnecessarily pulling her hair causing significant pain.

26. Officer Vihn maliciously charged Ms. Ronkin with Unlawful Entry (D.C. Code § 22-3302) and Disorderly Conduct (D.C. Code § 1321(1)), and had Ms. Ronkin placed in jail overnight to (1) punish Ms. Ronkin, (2) attempt to justify his unlawful conduct, and (3) attempt to avoid a civil lawsuit.

27. Based upon the crimes charged, Ms. Ronkin faced the possibility of up to $1,250 in fines and up to nine (9) months of incarceration.

28. While still wearing just a sundress, Ms. Ronkin was held in a holding cell through the night with other detainees.

29. Ms. Ronkin was repeatedly threatened and harassed by the other detainees and feared for her safety.

30. The next day, Ms. Ronkin was arraigned on the charges and released on her own personal recognizance.

31. As a condition of her bail, Ms. Ronkin was required to submit to weekly drug testing and was banned from the Gallery Place/Chinatown Metro entrance.

32.    These unnecessary bail conditions caused significant inconvenience for Ms. Ronkin, who at the time was an employed college student with a very busy schedule and relied heavily on public transportation.

33.    The bail conditions also caused Ms. Ronkin to suffer significant stress, embarrassment, and anxiety.

34.    Knowing that the criminal charges were not brought against Ms. Ronkin for the purpose of bringing her to justice for the crimes charged, Officer Vihn failed to appear in Court, and the charges were dismissed.

35.    The underlying incident in this matter was recorded by an unknown third party who subsequently uploaded the video to YouTube.

36.    The video has since gone viral and has been reposted on numerous websites, causing Ms. Ronkin significant continuing embarrassment.

37.    Numerous persons who have no knowledge of the law have commented on the video on various websites, causing yet further embarrassment for Ms. Ronkin.

38.    It is believed and therefore averred that Officer Vinh and/or another employee of WMATA attempted to get ahead of the story and to cover up Officer Vinh's unlawful conduct by placing the following comment on one of the websites that posted the video:

"This video appears to show a Metro Transit Police officer forcefully arresting a woman at the Gallery Place Metrorail station. I can tell you that the incident occurred at approximately 11:30 p.m., Sept. 16. However, the video did not provide a complete story of the events that occurred.

The officer initially observed the woman acting disorderly near the fare card machines. He asked her to leave the station. She exited the station and returned a short time later. The video begins when the officer approached her for the second time. She was continuing her disorderly behavior and was asked to leave by the officer. The woman

refused to leave and began to argue with the officer. The officer decided to place the woman under arrest. While attempting to place handcuffs on her, she pulled her arm away, and when the officer reached for her other arm, she tripped over the officer's foot, and they both fell to the ground. The officer dropped his handcuffs during the fall and attempted to restrain the woman as he reached for the handcuffs. He eventually handcuffed the woman and placed her under arrest. The woman was charged with disorderly conduct and unlawful entry. The case is scheduled to go to trial.

As soon as the video was brought to the attention of the Metro Transit Police on Sept. 20, the department launched an internal investigation. The investigation has been completed and it was determined that the officer acted lawfully and complied with departmental policies and procedures."

39.     The above account differs greatly from what is depicted on the video.

40.     Finally, Officer Vihn caused Ms. Ronkin further stress by coming numerous times to a restaurant/bar where she worked, while she was working, for an unknown purpose.

## COUNT I

### Plaintiff v. Defendant Vihn
### Violation of the First Amendment – Protected Speech
### Pursuant to 42 U.S.C. § 1983

41.     Paragraphs 1-40 are incorporated herein by reference.

42.     The United States Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is "shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." City of Houston v. Hill, 482 U.S. 451, 461 (1987).

43.     The "fighting words" exception requires a narrower application in cases involving words addressed to a police officer, "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" See Hill, 482 U.S. at 462.

6

44.     The rule requiring narrower application of the "fighting words doctrine" with respect to words addressed to a police officer is also compelled by "the constitutional shield [that protects] criticism of official conduct." New York Times Co. v. Sullivan, 376 U.S. 254, 273 (1964).

45.     It is believed and therefore averred that Officer Vihn admitted in an official police report that "the defendant exclaimed, 'You are a fucking asshole, I'm 21 years old!!'" at which time he placed Ms. Ronkin under arrest.

46.     The natural import of Ms. Ronkin's speech was an expression of criticism of the police, not an incitement of a crowd to act violently.

47.     It is clear from the video of the incident that Officer Vinh arrested Ms. Ronkin to retaliate against her for her critical speech.

48.     It is settled law that pursuant to the First Amendment to the U.S. Constitution, telling a police officer to "fuck off" is protected speech.

49.     Regardless, Officer Vinh unlawfully arrested Ms. Ronkin for engaging in protected speech.

50.     As a direct and proximate cause of Defendant Vihn's actions, Ms. Ronkin suffered physical pain, fear, inconvenience, financial loss, humiliation, embarrassment, emotional distress, and permanent injury to her reputation.

## COUNT II

**Plaintiff v. Defendant Vihn**
**Violation of the Fourth Amendment – False Arrest**
**Pursuant to 42 U.S.C. § 1983**

51.     Paragraphs 1-50 are incorporated herein by reference.

52.     It is well established that an arrest without probable cause violates the Fourth

Amendment to the U.S. Constitution. See Martin v. Malhoyt, 830 F.2d 237, 262 (D.C.Cir.1987) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)).

53.     Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. See Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

54.     Officer Vihn criminally charged Ms. Ronkin with Unlawful Entry (D.C. Code § 22-3302) and Disorderly Conduct (D.C. Code § 1321(1)).

55.     Ms. Ronkin's arrest was not supported by the requisite probable cause.

56.     It is believed and therefore averred that Officer Vihn admitted in an official police report that "the defendant exclaimed, 'You are a fucking asshole, I'm 21 years old!!'"

57.     Pursuant to the First Amendment of the U.S. Constitution, Ms. Ronkin's speech was protected speech and could not be criminalized.

58.     Moreover, except for her protected speech, Ms. Ronkin engaged in the same conduct as the other persons with whom she was travelling but was the only person who was criminally charged.

59.     Furthermore, at the time of her arrest, Ms. Ronkin was walking away from Officer Vihn, toward the Metro exit.

60.     Despite the absence of a warrant or probable cause that a crime was being committed, Officer Vinh arrested Ms. Ronkin.

61.     As a direct and proximate cause of Defendant Vihn's actions, Ms. Ronkin suffered physical pain, fear, inconvenience, loss of liberty, loss of freedom, financial loss, humiliation, embarrassment, emotional distress, and permanent injury to her reputation.

8

## COUNT III

### Plaintiff v. Defendant Vihn
### Violation of Fourth Amendment – Excessive Force
### Pursuant to 42 U.S.C. § 1983

62.  Paragraphs 1-61 are incorporated herein by reference.

63.  Pursuant to the Fourth Amendment to the U.S. Constitution, police officers enjoy a privilege to use objectively reasonable force to affect a lawful arrest. See  Graham v. Connor, 490 U.S. 386, 395 (1989).

64.  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 398.

65.  Since Ms. Ronkin's arrest was unlawful, Officer Vihn was not privileged to use *any* force against Ms. Ronkin.

66.  Therefore, all of the force used against Ms. Ronkin was unlawful and excessive.

67.  Even if Officer Vihn did enjoy a privilege to use objectively reasonable force to place Ms. Ronkin under arrest, it is clear from the video that the forced used was unreasonable and excessive.

68.  Specifically, Officer Vihn grabbed Ms. Ronkin by the neck, shoulders, and hair and threw her to the ground.

69.  Moreover, Officer Vihn spent three minutes purposefully causing Ms. Ronkin's sundress to ride up, exposing her red thong panties and naked buttocks to the public, and pressing what Ms. Ronkin believed to be his erect penis against her leg and bare buttocks.

70.  Finally, Officer Vihn pulled Ms. Ronkin's hair and caused unnecessary pain both in

9

using and applying the handcuffs.

71.     As a direct and proximate cause of Defendant Vihn's actions, Ms. Ronkin suffered physical pain, fear, inconvenience, financial loss, embarrassment, humiliation, emotional distress, and permanent injury to her reputation.

## COUNT IV

**Plaintiff v. Defendant Vihn**
**Violation of the Fourth Amendment – Malicious Prosecution**
**Pursuant to 42 U.S.C. § 1983**

72.     Paragraphs 1-71 are incorporated herein by reference.

73.     A malicious prosecution occurs when a person is unreasonably seized without probable cause, in violation of the Fourth Amendment and criminal charges are instituted against the person. Pitt. v. District of Columbia, 491 F.3d 494, 511 (D.C. Cir. 2007).

74.     Officer Vihn seized Ms. Ronkin without the requisite probable cause to do so in violation of the Fourth Amendment to the U.S. Constitution.

75.     Officer Vihn maliciously charged Ms. Ronkin with Unlawful Entry (D.C. Code § 22-3302) and Disorderly Conduct (D.C. Code § 1321(1)) for a purpose other than to bring her to justice for the crimes charged.

76.     Specifically, Officer Vihn filed criminal charges against Ms. Ronkin to (1) punish Ms. Ronkin for engaging in protected speech, (2) attempt to justify his unlawful conduct, and (3) attempt to avoid a civil lawsuit.

77.     Based upon the crimes charged, Ms. Ronkin faced the possibility of up to $1,250 in fines and up to nine (9) months of incarceration.

78.     The criminal charges were ultimately decided in Ms. Ronkin's favor.

10

79.     As a direct and proximate cause of Defendant Vihn's actions, Ms. Ronkin suffered fear, inconvenience, loss of liberty, loss of freedom, financial loss, humiliation, embarrassment, emotional distress, and permanent injury to her reputation.

## COUNT V

**Plaintiff v. Defendant Vihn**
**Intentional Infliction of Emotional Distress**

80.     Paragraphs 1-79 are incorporated herein by reference.

81.     In the District of Columbia, a claim for Intentional Infliction of Emotion Distress ("IIED") arises due to "'(1) extreme and outrageous conduct on the part of the defendant that (2) either intentionally or recklessly (3) caused the plaintiff severe emotional distress.'" Hamilton v. Dist. of Columbia, Civil Action No. 09-00892(JDB), 2012 WL 1130855, at *11 (D.D.C. Apr. 5, 2012) (quoting Abourezk v. New York Airlines, Inc., 895 F.2d 1456, 1458 (D.C. Cir.1990)).

82.     Officer Vihn acted extreme and outrageous when he falsely arrested Ms. Ronkin, used excessive force against Ms. Ronkin, and maliciously prosecuted Ms. Ronkin.

83.     Officer Vihn acted extreme and outrageous when he intentionally or recklessly moved Ms. Ronkin's sundress and exposed her red thong panties and naked buttocks to the general public in the Metro station.

84.     Officer Vihn's actions caused Ms. Ronkin to suffer severe emotional distress as she lay on the floor of the Metro station with her panties and naked buttocks exposed for all to see and to record on video.

85.     Officer Vihn's actions caused Ms. Ronkin to suffer severe emotional distress because at least one person, who remains unknown to Ms. Ronkin, posted a video of Ms. Ronkin being physically

11

assaulted by Officer Vinh on the Internet.

86.    The video in question has since gone viral and has been reposted on numerous websites where the general public has been permitted to leave comments.

87.    While most of the public commentary is negative toward Officer Vihn, some hurtful and embarrassing comments have been left about Ms. Ronkin.

88.    Officer Vihn acted extreme and outrageous by coming numerous times to a restaurant/bar where Ms. Ronkin worked, while she was working, for an unknown purpose.

89.    As a direct and proximate cause of Defendant Vihn's actions, Ms. Ronkin suffered fear, inconvenience, loss of liberty, loss of freedom, financial loss, humiliation, embarrassment, emotional distress, and permanent injury to her reputation.

## COUNT VI

**Plaintiff v. Defendant Vihn**
**Invasion of Privacy**

90.    Paragraphs 1-89 are incorporated herein by reference.

91.    Invasion of Privacy (intrusion upon seclusion) occurs when there is "an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination," (2) into the Plaintiff's "private or secret concerns," (3) which "would be highly offensive to an ordinary, reasonable person." Danai v. Canal Square Associates, 862 A.2d 395, 400 (D.C. 2004) (quoting Wolf v. Regardie, 553 A.2d 1213, 1217 (D.C. 1989)).

92.    Officer Vihn physically intruded upon Ms. Ronkin's privacy by pulling up her skirt and exposing her red thong panties and naked buttocks for himself and the general public to view.

12

93. Officer Vihn further intruded upon Ms. Ronkin's privacy by pressing what Ms. Ronkin believes to be his erect penis against Ms. Ronkin's leg and bare buttocks.

94. Officer Vihn's actions intruded into Ms. Ronkin's "private and secret concerns," and were "highly offensive" to an "ordinary, reasonable person."

95. As a direct and proximate cause of Defendant Vihn's actions, Ms. Ronkin suffered fear, inconvenience, loss of liberty, loss of freedom, financial loss, humiliation, embarrassment, emotional distress, and permanent injury to her reputation.

**WHEREFORE**, the Plaintiff, Karissa A. Ronkin, respectfully requests that judgment be entered in her favor as follows:

A. That this Court declare that the Defendant's actions violated the Plaintiff's Constitutional rights;

B. Compensatory damages;

C. Punitive damages;

D. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

E. A jury trial; and,

F. Such other financial and/or equitable relief as is reasonable and just.

**RESPECTFULLY SUBMITTED,**

**Dated: May 7, 2012**

s/*Devon M. Jacob*

**DEVON M. JACOB, ESQUIRE**
**Pa. Supreme Ct. I.D. 89182**
**Email: dmjacob@dennisboylelaw.com**

**TRAVIS S. WEBER, ESQUIRE**
**Pa. Supreme Ct. I.D. 309319**
**Email: tweber@dennisboylelaw.com**

s/*Dennis E. Boyle*

**DENNIS E. BOYLE, ESQUIRE**
**Pa. Supreme Ct. I.D. 49618**
**Email: deboyle@dennisboylelaw.com**

**BOYLE, AUTRY & MURPHY**
**1050 Connecticut Ave, NW, 10th Floor**
**Washington, DC 20036**

**Phone:       202.772.1887**
**Toll Free:   866.661.7930**
**Fax:         202.772.3101**

**Counsel for Plaintiff Karissa A. Ronkin**

14