**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KARISSA A. RONKIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:12-CV-00729 (RBW) |
| v. | ) | |
| | ) | |
| ANDY B. VIHN | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>DEFENDANT VINH'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant Vinh comes before the court pursuant to Fed. R. Civ. P. 56 and moves for summary judgment.  As grounds for this motion, Defendant states that he is entitled to qualified immunity on the claims made by Plaintiff including, Count I, Violation of Plaintiff's First Amendment right to verbally abuse a uniformed Police Officer in a public space with impunity, Count II, Violation of Plaintiff's Fourth Amendment right to be free from arrest without probable cause, Count III, violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure, Count IV, violation of Plaintiff's Fourth Amendment right to be free from malicious prosecution, Count V, intentional infliction of emotional distress and Count VI, invasion of privacy.  Plaintiff's claim of common law intentional infliction of emotional distress is barred by the statute of limitations. 12 D.C. Code § 301 (2010 Ed.).  Plaintiff fails to state a claim for invasion of privacy.

As support for this motion, Defendant Vinh refers the court to the Memorandum of Points and Authorities filed in support hereof.

Respectfully submitted,

Andy B. Vinh

Kathryn Pett #1013423
General Counsel


/s/ Kathleen A. Carey
Kathleen A. Carey # 357990
Chief Counsel- Torts
600 Fifth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 962-1496
E-mail: kcarey@wmata.com
Attorneys for Defendant Vinh


Certificate of Service

I hereby certify that I served a copy of this Motion for Summary Judgment, Memorandum, Statement of Material Facts and Proposed Order by efiling on this 20th day of December, 2013 to:

Devon M. Jacob
P.O. Box 837
Mechanicsburg, PA  17055-0837


/s/Kathleen A. Carey

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KARISSA A. RONKIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:12-CV-00729 (RBW) |
| v. | ) | |
| | ) | |
| ANDY B. VIHN | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Vinh comes before this court and seeks summary judgment on all claims by

Plantiff Ronkin in her complaint filed with this court on June 11, 2012.

I.      Preliminary Statement

On September 16, 2010, Defendant Vinh was employed as a WMATA Transit Police

Officer assigned to Gallery Place Metrorail Station.  Plaintiff Ronkin entered the station using

the Chinatown entrance, and was engaging in horse play and rough housing with a friend in an

area of the station used by the general public.  Defendant Vinh told her to stop or leave the

station.  After cussing and swearing at the officer because she took offense at being told what to

do and in the way the officer spoke to her, Plaintiff and her friends left the station as they had

been told to do.  However, they returned within 5 minutes.  Plaintiff Ronkin approached

Defendant Vinh again cussing and yelling and Defendant Vinh again told them all to leave.  On

three occasions he responded to Plaintiff's Ronkin's tirade by telling her to "take a cab."   After

the third time being told to take a cab,  Ms. Ronkin failed to leave and Defendant Vinh decided

to arrest her.  She physically resisted arrest, causing both herself and Defendant Vinh to fall to

the floor.  After a brief struggle, Defendant Vinh secured Plaintiff in handcuffs and arranged for

transport to the District of Columbia Metropolitan Police Station.  She was charged with

unlawful entry and disorderly conduct/public intoxication.  On  the government  entered a nolle

prosequi and all charges were dismissed.

A portion of the interaction between Ms. Ronkin and Defendant Vinh was recorded by an

unknown customer with his cellphone.  That unknown individual then uploaded the video on

YouTube.

II.     Legal Argument

A.  Defendant Has Qualified Immunity from Plaintiff's Claims

Plaintiff alleges that her First and Fourth Amendment rights were violated when

Defendant Vinh arrested her.  At the time of the arrest, September 16, 2010, the Unlawful Entry

statute stated in pertinent part:

> Any person who, without lawful authority, shall enter, or attempt to enter, any
> public building, or other property, or part of such building, or other property,
> against the will of the lawful occupant or of the person lawfully in charge thereof
> or his or her agent, or being therein or thereon, without lawful authority to remain
> therein or thereon shall refuse to quit the same on the demand of the lawful
> occupant, or of the person lawfully in charge thereof or his or her agent, shall be
> deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a
> fine of not more than the amount set forth in § 22-3571.01, imprisonment for not
> more than 6 months, or both.

D.C. Code §22-3302 (2009).

At the time of Plaintiff's arrest, the disorderly conduct statute stated in pertinent part:

> Whoever, with intent to provoke a breach of the peace, or under circumstances
> such that a breach of the peace may be occasioned thereby  (1) acts in such a
> manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; . . .
> (5) causes a disturbance in any …public conveyance by . . . annoying passengers

2

or employees, shall be fined not more than $250 or imprisoned not more than 90 days, or both.

D.C. Code §22-1321 (2009).

WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia, approved by Congress through Pub. L. No. 89-774. Section 76 of the Compact, the WMATA governing document, defines the ability of WMATA to create a police force and defines the authority of that force. Section 76(e) also provides that WMATA "shall have the power to adopt rules and regulations for the safe, convenient and orderly use of the transit facilities, owned, controlled or operated by the Authority including . . . the safety and protection of the riding public." In accordance with that authority, WMATA issues rules and regulations regarding the use of the transit facilities, such as Gallery Place Metrorail Station. At the time of the incident in this litigation, September 16, 2010, Tariff #29 was in effect at the time and provided, among other things, as follows:

> 3. Objectionable Persons
>
> The Authority reserves the right to refuse to transport a person or persons under the influence of intoxicating liquor or drugs, or whose conduct is such, or likely to be such, as to make that person objectionable to other persons. (Tariff 29 attached hereto).

Judging Defendant Vinh's actions from the perspective of a reasonable police officer on the scene, it is clear that Defendant Vinh did not violate any constitutional rights of Plaintiff. Under either the unlawful entry statute or the disorderly conduct statute, or pursuant to the Tariff, Defendant Vinh had authority to deny Ms. Ronkin the use of the Metrorail system, based upon what he observed of her conduct, and had probable cause to arrest her after she repeatedly refused his orders to leave the station and take a cab.

3

In order to prevail on a claim for a violation of 42 USC §1983, and successfully challenge the defense of qualified immunity, Plaintiff must establish that at the time of the challenged conduct, she was denied a clearly established constitutional right under color of law. Reichle v. Howard, 132 S. Ct. 2088, 2093 (2012).  A right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" Id. (Citation omitted).

"Qualified immunity 'gives government officials breathing room to make reasonable, but mistaken judgments,' and `protects all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S.____, 131 S. Ct. 2074, 2085 (2011).  In an excessive force claim, an officer will be held liable "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." Lash v. Lemke, 2012 U.S. Dist. LEXIS 134951 (D.D. C. Sept. 30, 2013), citing Rogala v. District of Columbia 161 F.3d 44, 54 (D.C. Cir. 1998).  In Lash v. Lemke, an officer used a taser to assist in an arrest of a protester in the "Occupy D.C." encampment in McPherson Square.  The court held that because officers are "often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation" the court will deny summary judgment only if it is "so apparent that no reasonable officer could have believed in the lawfulness of his action."  Id.   "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth Amendment.  Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973).   "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham v. Connor, 490 U.S. 386, 396 (1989).

In <u>Cromartie v. District of Columbia</u>, 2012 U.S. App. LEXIS 8979 (D.C. Cir. 2012), the court held that being "slammed to the ground, handcuffed, and forcibly kept on the ground by one or both officers" was no more than the usual "degree of physical coercion" commonly used to effectuate an arrest.   In order to sustain a claim of a constitutional violation, the claimed injury must be more than <u>de minimis</u>.  <u>Glenn v. City of Tyler</u>, 242 F.3d 307 (5th Cir. 2001) cited by <u>Dormu v. District of Columbia</u>, 795 F. Supp. 2d 7, 24 (D.D.C. 2011).

Plaintiff Ronkin claims that in the course of being restrained and ultimately hand-cuffed in the course of the arrest, Defendant Vinh sexually assaulted her when he had her pinned to the ground.  However, Plaintiff Ronkin never reported any sexual assault at any time.  The video of the incident shows Plaintiff Ronkin laughing while defendant Vinh is attempting to get control of her and attempting to handcuff her.  She complains to Defendant Vinh while they are both on the ground that she needs to pull her dress down because it is revealing her undergarments.  At no time during any of the incident, either while being subdued or held awaiting a transport vehicle, does she complain of any sexual assault.  The video is the best evidence of what happened on the scene.

In <u>Scott v. Harris</u>, 550 U.S. 372 (2007) the Supreme Court reversed a denial of a motion for summary judgment in a case seeking damages pursuant to 42 U.S.C. § 1983.  The plaintiff was injured in a vehicle crash after being chased down narrow, two-lane roads at night by the police.  The defendant produced a video recording of the police chase obtained from a camera mounted on the dash board of the police car.  The plaintiff testified in discovery to a version of events which was "blatantly contradicted" by the video. <u>Scott v. Harris</u>, <u>supra</u> at 380.  In an 8 to1 decision, the Supreme Court held that, even when viewing the facts in a light most favorable to the non-moving party, the Court of Appeals was wrong in relying upon the facts provided by the

plaintiff which were clearly at odds with the video recording.  Justice Scalia reasoned that even though there existed a dispute between the parties' testimony regarding the events, that dispute was decided in the defendant's favor by the video recording of the event.  The Appellate Court "should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."  Id at 381.  The Court held that, because the plaintiff's version of events was discredited by the video, no reasonable jury could have believed him.  The Court reversed the order denying the defendant police officer summary judgment.

Because the incident in this case was, in part, captured on the video, and it  "blatantly contradicts" Plaintiff Ronkin's allegations of a sexual assault and shows that Defendant Vinh had probable cause to arrest Ms. Ronkin for unlawful entry and disorderly conduct, the circumstances of this arrest and reasonable use of force entitle Defendant Vinh to qualified immunity from suit on Counts I, II, III, and IV.

      B.  <u>Plaintiff's Claim of Intentional Infliction of Emotional Distress is Barred by the Statute of Limitations</u>

Plaintiff claims in Count V of her complaint that Defendant Vinh intentionally inflicted emotional distress.  The facts in support of that claim as listed in paragraphs 82 through 88 of Plaintiff's complain are intertwined with, and an outgrowth of, the facts in support of the alleged false arrest, excessive force (battery) and malicious prosecution of Ms. Ronkin.  However, each of these intentional torts has a one year statute of limitations.  D.C. Code 12-301(4).  The actions in this litigation occurred on September 16, 2010, and Plaintiff did not file her complaint until May 7, 2012, almost one year after the expiration of the statute of limitations. Because of the identity of facts in support of the intentional infliction of emotional distress with those facts which constitute torts with a one year statute of limitation, Count V is also time barred.

6

In Rendall-Speranza v. Nassim, 107 F.3d 913, 920 (D.C. Cir. 1997) the court held that because every act which supported a claim for the intentional infliction of emotional distress was either an assault or battery, the claim was time barred. In Moreno v. D.C., 925 F. Supp. 93, 99 (D.D.C. 2013) the court found that the claims against the District of Columbia were barred by a failure to provide a statutory notice pursuant to D.C. Code §12-309 (2013). However, the court went on to note that there was an "equally plausible" challenge by the District of Columbia to the claim for emotional distress as being time barred because it was subject to the one year intentional tort statute of limitations. The court dismissed a claim for the intentional infliction of emotional distress that was intertwined with a claim for battery in Zhi Chen v. Monk, 701 F. Supp. 2d 32, 36-37 (D.D. C. 2010).

The same analysis of Plaintiff Ronkin's claim supports Defendant Vinh's argument that Count V is also time barred.

C. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted To Malicious Prosecution

Count IV seeks to allege a cause of action for malicious prosecution. The existence of probable cause for the arrest and the inability of Plaintiff to prove that the criminal charges were terminated in her favor are fatal to her claims under this count.

There is no meaningful distinction between probable cause in the context of a claim for false arrest, and probable cause in a claim for malicious prosecution. Saidi v. WMATA, 928 F. Supp. 21, 27 (D.D.C. 1996). In order to prove malicious prosecution, Plaintiff must show that the underlying suit terminated in her favor, that Defendant initiated the suit with malice, that Defendant lacked probable cause, and that Plaintiff suffered a special injury. In addition to the fact that Plaintiff will not be able to prove an absence of probable cause for her arrest, a nolle prosequi cannot provide the basis for a claim of malicious prosecution, because it does not constitute a favorable outcome; an element of malicious prosecution. Auerbach v. Freeman, 43 App. D.C. 176 (1915) (larceny was nolle prossed and therefore

7

there was no institution of charges); <u>Dellums v. Powell</u>, 566 F.2d 167, 192 (D.C. Cir. 1977); <u>Kingberg   v.</u> <u>District of Columbia</u>, 1998 U.S. Dist. LEXIS 339, 43-44 (D.D.C. Jan. 5, 1998).

For this reason, Defendant seeks judgment on Count IV of Plaintiff's complaint.

D. <u>Plaintiff Fails To State  A Claim Upon Which Relief Can Be Granted For The Invasion Of Privacy</u>

In Count VI Plaintiff alleges a violation of privacy, claiming that Defendant Vinh intentionally pulled up her skirt in order to expose her undergarments and buttocks and that Defendant Vinh pressed what Ms. Ronkin "believes to be his erect penis" against her when Plaintiff and Defendant both fell to the floor in the Metrorail station.  Neither these allegations, nor any of the undisputed facts of this case, state a claim for invasion of privacy.

The court has described the tort of invasion of privacy as a complex of four causes of action each with their own elements.  The four are, intrusion upon one's solitude or seclusion, public disclosure of private facts, publicity placing a person in a false light and appropriation of one's name or likeness for the benefit of another. <u>Danai v. Canal Square Associates</u>, 862 A.2d 395, 400 (D.C. 2004).  One who intentionally intrudes upon the seclusion of another or his private affairs or concerns may be liable.  <u>Randolph v. ING Life Ins. & Annuity Co.</u>, 973 A.2d 702, 711 (D.C. 2009) (disclosure of employee records).  However, a claim may only be successfully asserted if "the claimant has suffered an unreasonable and serious interference with protected interests."  <u>Helton v. United States</u>, 191 F. Supp. 2d 179, 183 D.D.C. 2002)(plaintiffs charged with misdemeanors and other minor offenses were subjected to squat and search techniques).  Moreover, a defendant is not liable for invasion of privacy where a third party wrong-doer was the source of the tortious disclosure.  <u>Randolph v. ING Life Ins. & Annuity Co.</u>, 973 A.2d at 711.

In this case, there are no facts that support Plaintiff's claim that Defendant Vinh intentionally pulled her dress up and exposed her undergarments and buttocks.  In her deposition, Plaintiff conceded that "she felt her dress go back up" but she could not say that Defendant Vinh pulled it up.  (Ronkin Depo p. 65, 66).  Additionally, the invasion Plaintiff complains of is posting the video of the arrest by an unknown, third party, not Defendant Vinh   Plaintiff herself posted comments on the internet identifying herself as the "drunk idiot" in the video.  (Exh. #1 to Ronkin Depo.)  Plaintiff Ronkin can hardly claim now that "she suffered an unreasonable and serious interference with protected interests."  Helton v. United States, 191 F. Supp. 2d at 183.

For these reasons Defendant requests that the court dismiss Count V of the Plaintiff's complaint.

III.   Conclusion

Defendant Vinh is entitled to judgment on all claims of Plaintiff's complaint and requests that this court enter judgment on his behalf.

Respectfully submitted,

Andy B. Vinh

Kathryn Pett 1013423
General Counsel


 /s/ Kathleen A. Carey
Kathleen A. Carey # 357990
Chief Counsel- Torts
600 Fifth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 962-1496
E-mail: kcarey@wmata.com
Attorneys for Defendant Vinh

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KARISSA A. RONKIN ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:12-CV-00729 (RBW) |
| v. ) | |
| ) | |
| ANDY B. VINH ) | |
| ) | |
| Defendant. ) | |
| ) | |

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Defendant Vinh comes before the court pursuant to Fed. R. Civ. P. 56 and states that the following material facts are not in dispute.

1. On September 16, 2010, Defendant Andy B. Vinh was employed as a WMATA Transit Police Officer. (Plaintiff's Complaint ¶5)

2. On that date, at approximately 2250 hours, Defendant Vinh was on duty and assigned to the Gallery Place Metrorail Station, Chinatown entrance. (Plaintiff's Complaint ¶5)

3. On that date and time, Plaintiff Karissa Ronkin, entered Gallery Place accompanied by Justin Wilson and Sarah Weber. (Plaintiff's Complaint ¶¶ 3 and 6)

4. While in the unpaid area of the station near the fare card machines, Plaintiff and Mr. Wilson began to engage in horse play and rough house causing patrons to flee the area. (Plaintiff's Complaint ¶9; Vinh Depo. p.28; Wilson Depo. pp 17 and 21)

5. Defendant Vinh approached Plaintiff and Mr. Wilson and told them to stop the rough house or leave the station. (Wilson depo. p. 18; Ronkin Depo. p. 30)

1

6.  Plaintiff Ronkin took offense to the manner in which Defendant Vinh spoke with her and began to curse and yell at Defendant disturbing patrons and drawing attention to herself. (Ronkin depo. pp. 28-32)

7.  Plaintiff Ronkin and her companions then left the Gallery Place Metrorail Station as they had been told to do by Defendant Vinh. (Ronkin Depo. p. 3233; Wilson Depo. p. 18, 21, 22)

8.  Without any further direction or interaction between Plaintiff and Defendant, within 5 minutes, Ms. Ronkin and both companions re-entered the station. ((Ronkin Depo. p. 36-37; Wilson Depo. p.25)

9.  Ms. Ronkin confronted Defendant Vinh, again cursing and yelling at Defendant, and drawing attention to herself. (Ronkin Depo. p. 44; Youtube Video)

10. During this second profanity laced confrontation initiated by Plaintiff Ronkin, Defendant Vinh directed Ms. Ronkin at least three times to "take a cab" and again tells her to leave the station.  He did not allow Plaintiff access to the paid area of the station. (Youtube Video)

11. Ms. Ronkin informs Defendant Vinh that she is "a 21 fucking year old and can do whatever the fuck I want." (MPD 163). (Youtube Video)

12. Defendant Vinh then tells Plaintiff to approach because he is intending to arrest her. (Youtube Video)

13. She physically resists his efforts to arrest her and in her efforts at resisting, both Defendant Vinh and Plaintiff Ronkin fall to the floor of the rail station. (Youtube Video)

2

14. After a brief struggle, Defendant Vinh handcuffs Plaintiff picks her up off the floor and she remains seated against the wall until transporting Transit Police Officers arrive. (Youtube Video)

15. While Plaintiff is waiting for a transport, Ms. Ronkin yells out "It's Sake Night" and "I'm hammered, I'm drunk but I'm not like falling down." (Ronkin Depo. 111) (Youtube Video)

16. After the phone video of a portion of the incident was posted on You Tube, Plaintiff Ronkin posted the following comment: "I was a drunk idiot in the clip and I know I was partially in the wrong. . . . " (Ronkin Depo. p. 48-49) (Youtube Video)

17. Plaintiff was charged with unlawful entry and disorderly conduct/public intoxication. (PD 163)

18. The prosecuting attorney entered a nolle prosequi on both charges on October 7, 2010. (Court Case Online printout)

19. Plaintiff filed a complaint in this court on May 7, 2012, almost two years after the events in question.

20. Plaintiff Ronkin has made no claim for medical expenses and required no medical attention as a result of the arrest on September 16, 2010. (Ronkin Answers to Interrogatories #14)

Respectfully submitted,

Andy B. Vinh

Kathryn Pett 1013423
General Counsel


 /s/ Kathleen A. Carey
Kathleen A. Carey # 357990
Chief Counsel- Torts
600 Fifth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 962-1496
E-mail: kcarey@wmata.com
Attorneys for Defendant Vinh

4